UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS,

    Plaintiff,

     v.

DICK KEMPTHORNE,
Secretary of the Interior,

    Defendant.

Civil Action No. 08-472 (CKK)

**MEMORANDUM OPINION**
(December 22, 2008)

      Plaintiff Wildearth Guardians brings this suit for declaratory and injunctive relief against Defendant Dick Kempthorne in his official capacity as Secretary of the Interior.  Plaintiff filed its original Complaint in this matter on March 19, 2008, alleging that Secretary Kempthorne has failed to comply with his mandatory duty, under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, to make a preliminary "90-day finding" on two separate ESA "listing" petitions submitted by Plaintiff.  Subsequent to filing its Complaint in the above-captioned case, Plaintiff submitted a separate petition to Defendant requesting that a small subset of species, all of which had been included in one of the two petitions at issue in the original Complaint, be given protection on an emergency basis, which request Defendant subsequently denied.  Plaintiff now moves the Court for leave to amend its Complaint for clarification purposes and to supplement the Complaint to include a new claim against Defendant stemming from its denial of Plaintiff's emergency petition. Although Defendant does not object to Plaintiff's request for leave to amend, Defendant does oppose Plaintiff's request for leave to supplement the Complaint with a new claim.  After a

thorough review of the parties' submissions, applicable case law, statutory authority and regulations, the Court shall GRANT IN PART and DENY IN PART Plaintiff's [14] Motion for Leave to Amend and Supplement the Complaint.  Specifically, Plaintiff's Motion shall be granted as to its request for leave to amend, but shall be denied as to its request for leave to supplement, for the reasons set forth below.

## I.  BACKGROUND

### A.  Statutory Background

In 1973, Congress enacted the ESA, 16 U.S.C. §§ 1531 to 1544, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species."[1]  16 U.S.C. § 1531(b).  In order to receive the Act's protections, a species must be "listed" as endangered or threatened by the Secretary of the Interior.[2]  The determination of whether a given species should be listed as endangered or threatened under the ESA may be made either on the initiative of the Secretary via the "candidate process" or in response to a citizen's request via the "petition process."  *See id.* §§ 1533(a)(1), 1533(b)(3).  Once a species is listed, through either the candidate process or the petition process, the ESA provides that the Secretary

_____

[1]An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range . . .," 16 U.S.C. § 1532(6), while a "threatened species" is any species "which is likely to become an endangered species within the foreseeable future. . .," *id.* § 1532(20).

[2]The Secretary has delegated his duties for terrestrial (*i.e.,* non-marine) species to the United States Fish and Wildlife Service ("FWS").  *See* 50 C.F.R. § 402.01(b).  For purposes of convenience, the Court shall use the term "Secretary" to refer to both the Secretary of the Interior and the FWS throughout this Memorandum Opinion.

"shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species." *Id.* § 1533(d).

In determining whether to list a species, the Secretary determines whether the species "is a threatened or endangered species because of any of the following factors:"

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

*Id.* § 1533(a)(1).  This determination must be made "solely on the basis of the best scientific and commercial data available to [the Secretary] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect such species." *Id.* § 1533(b)(1)(A).

As is relevant to the instant case, any "interested person" may petition to have a species listed as threatened or endangered pursuant to the petition process referenced above. *Id.* § 1533(b)(3)(A).  Once a petition is received, the Secretary is required to determine whether the petition presents "substantial scientific or commercial information" indicating that the petitioned action may be warranted. *Id.*  The ESA specifies that the Secretary is required to make that finding—known as the "90-day finding"—within 90 days after receiving the petition, "[t]o the maximum extent practicable." *Id.*

The 90-day finding is published in the Federal Register. *Id.* § 1533(b)(3)(A).  If the

Secretary determines that the listing is not warranted, the listing process for that species is terminated. *See id.* However, if the Secretary determines that the petitioned action is warranted, the Act provides that the "Secretary shall promptly commence a review of the status of the species concerned." *Id.* Within 12 months of the receipt of the petition, the Secretary is required to make a finding—known as the "12-month finding"—stating whether the petitioned action is (a) warranted; (b) not warranted; or (c) warranted but precluded by other listing activity. *Id.* § 1533(b)(3)(B).

Under the normal listing procedures, the Secretary lists a species by promulgating a regulation after undertaking formal rulemaking pursuant to the procedures set forth in the ESA and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq. See id.* § 1533(b)(4). However, in situations where there exists an "emergency posing a significant risk to the well-being of any species of fish or wildlife or plants," the ESA authorizes the Secretary to bypass ESA and APA rulemaking procedures and issue regulations, including a listing, that take effect, at the discretion of the Secretary, immediately upon publication in the Federal Register. *Id.* § 1533(b)(7). This statutory provision lies at the heart of the instant dispute, and it provides, in full:

> Neither paragraph (4), (5), or (6) of this subsection nor section 553 of Title 5 shall apply to any regulation issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants, but only if--
>
> > (A) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary; and
> >
> > (B) in the case such regulation applies to resident species of fish or wildlife, or plants, the Secretary gives actual notice of such regulation to the State agency in each State in which such species is believed to occur.
>
> Such regulation shall, at the discretion of the Secretary, take effect immediately upon the publication of the regulation in the Federal Register. Any regulation promulgated under the authority of this paragraph shall cease to have force and effect at the close of

4

> the 240-day period following the date of publication unless, during such 240-day period, the rulemaking procedures which would apply to such regulation without regard to this paragraph are complied with. If at any time after issuing an emergency regulation the Secretary determines, on the basis of the best appropriate data available to him, that substantial evidence does not exist to warrant such regulation, he shall withdraw it.

*Id.* As the statute makes clear, the Secretary is to provide "detailed reasons" for an emergency listing in its Federal Register notice, but need not first issue it as a proposed regulation or provide any public notice. *See id.* Nor does the ESA provide any mandatory time-line that the Secretary must abide by when deciding whether to exercise emergency authority. *See id.* Moreover, as expressly provided in the statute, emergency listing determinations and regulations are temporary in nature and remain in effect only for 240 days, unless the procedures for a conventional listing (*i.e.*, made pursuant to the formal rulemaking procedures set forth in the ESA and the APA) are thereafter complied with and a new regulation is issued within the 240-day period. *Id.* If, at any time after issuing an emergency regulation, the Secretary "determines, on the basis of the best appropriate data available to him, that substantial evidence does not exist to warrant such regulation, he shall withdraw it." *Id.*

### B. Procedural and Factual Background

On June 18, 2007, Plaintiff submitted a petition, pursuant to the citizen petition process of the ESA, 16 U.S.C. § 1533(b)(3)(A), asking the Secretary to list and thereby protect 475 species of plants and animals found in the FWS' Southwestern Region (the "Southwest Petition"). Plaintiff's Motion for Leave to Amend and Supplement Complaint, Docket No. [14], ("Pl.'s Mot.") at 2. On July 24, 2007, Plaintiff submitted a second petition, pursuant to the citizen petition process of the ESA, requesting the Secretary list and thereby protect 206 species of plants and animals found in FWS' Mountain-Prairie Region (the "Rocky Mountain Petition"). *Id.* Together, the Southwest

Petition and the Rocky Mountain Petition (collectively, the "Regular Petitions") sought the listing as threatened or endangered species under the ESA of 674 species.[3]  *Id.*  To date, the Secretary has not made 90-day findings for any of the 674 species included in the two Regular Petitions.  *See id.* at 4; *see also* Defendant's Opposition to Plaintiff's Motion for Leave to Amend and Supplement Complaint, Docket No. [15], ("Def.'s Opp'n") at 4.  Plaintiff filed the instant lawsuit to compel the Secretary to make the 90-day findings on the 674 species in the Regular Petitions.  *See* Complaint, Docket No. [1].

Subsequently, on June 12, 2008, Plaintiff selected 32 of the 674 species included in the Regular Petitions and filed a separate petition, pursuant to section 553 of the APA, requesting that the Secretary protect these species on an emergency basis (the "Emergency Petition").[4]  *See* Pl.'s

---

[3]The Southwest Petition (475 species) and the Rocky Mountain Petition (206) species sum up to 681 species.  However, one species in the Southwest Petition was petitioned under both its prior and its current scientific names and six species were included in both Regular Petitions because they live in both geographic regions.  Accordingly, the actual total number of species covered by the two Regular Petitions is 674.

[4]As an initial matter, the Court notes that the parties disagree whether Plaintiff even had the right, in the first instance, to submit a petition requesting an emergency listing(s) pursuant to the APA.  Recognizing that the ESA itself does not provide individuals with a "statutory right to petition the Secretary for an emergency listing under § 1533(b)(7)," *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005), Plaintiff makes the novel argument that the APA—independent of the ESA—gives Plaintiff the initial right to petition the Secretary to issue an emergency listing.  Specifically, Plaintiff relies upon Section 553 of the APA, 5 U.S.C. § 553(e), which provides that an "agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).  According to Plaintiff, because the ESA grants the Secretary the authority to issue regulations on an emergency basis, Section 553 of the APA therefore gives Plaintiff the right, as an "interested person," to petition the Secretary to issue an emergency listing.  *See* Pl.'s Reply at 2-3.  The Court notes that, although both parties briefly raise this disagreement, neither party has fully briefed the issue.  Moreover, the Court finds that, regardless of whether Plaintiff had the statutory right to submit its Emergency Petition, the record is clear that the Secretary in fact acted upon Plaintiff's request in this case and it is that action denying Plaintiff's request to issue emergency listings that Plaintiff seeks to challenge in its supplemental claim.  Accordingly, the Court need not decide whether the APA provides

Mot. at 4-5; *see also* Def.'s Opp'n, Ex. 1 (Petition Requesting Emergency Listing of 32 Species

Under Endangered Species Act, at 1 (June 12, 2008)).  By two separate letters dated July 22, 2008

and July 25, 2008, the Secretary denied Plaintiff's Emergency Petition.  *See* Pl.'s Mot. at 4-5; *see*

*also* Def.'s Opp'n, Ex. 2 (July 22, 2008 Letter) and Ex. 3 (July 25, 2008 Letter).  Pursuant to the

parties' proposed schedule, *see* Docket Nos. [12] and [13], Plaintiff now seeks to supplement its

original Complaint to include a new claim challenging the Secretary's decision not to invoke the

"emergency" listing procedure available under the ESA at section 1533(b)(7), which would have

allowed the Secretary to bypass the standard rulemaking procedures with respect to listing the 32

species included in Plaintiff's Emergency Petition.

## II.  LEGAL STANDARD

Plaintiff's Motion seeks leave both to amend and supplement its complaint.  Pursuant to

Federal Rule of Civil Procedure 15(a), a party may amend its pleadings after a responsive pleading

has been served only with the opposing party's written consent or the court's leave.  FED. R. CIV. P.

15(a)(2).  Pursuant to Federal Rule of Civil Procedure 15(d), on motion and reasonable notice, a

court may, on just terms, permit a party to supplement its pleadings to set out any transaction,

occurrence or event that happened after the date of the pleading to be supplemented.  FED. R. CIV. P.

15(d).  Motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject

to the same standard.  *See Armstrong v. Bush*, 807 F. Supp. 816, 818-19 (D.D.C. 1992) (collapsing

inquiry under Rules 15(a) and 15(d)); *see also Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th

Cir. 1996) (standard under Rule 15(d) is the same as under Rule 15(a)).  The decision whether to

grant leave to amend or supplement a complaint is within the discretion of the district court, but

_____

Plaintiff the right to petition the Secretary in the first instance for an emergency listing.

leave "should be freely given unless there is a good reason, such as futility, to the contrary."

*Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996) (internal citations

omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts or

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an

opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules

require, be 'freely given.'").

## III.  DISCUSSION

### A.  Plaintiff's Request for Leave to Amend its Complaint

First, Plaintiff moves for leave to amend its Complaint for purposes of clarification.  Pl.'s

Mot. at 5.  Specifically, Plaintiff seeks to amend the Complaint to clarify that only a total of 674

species—not 681 as stated in the original Complaint—are covered by the two Regular Petitions.

*See id.*  As Plaintiff explains, although the Southwest Petition (475 species) and the Rocky

Mountain Petition (206) species sum up to 681 species, one species in the Southwest Petition was

petitioned under both its prior and its current scientific names and six species were included in both

Regular Petitions because they live in both geographic regions, such that the actual total number of

species covered by the two Regular Petitions is 674.  *Id.* at 2 n.1; *see also* Pl's Reply at 1 n.1, 2.

Defendant does not object to this request.  Def.'s Opp'n at 1 n.1.  Accordingly, the Court shall grant

Plaintiff's motion as to its request for leave to amend it Complaint for clarification purposes.

*B.  Plaintiff's Request for Leave to Supplement its Complaint*

Second, Plaintiff moves for leave to supplement its Complaint with a new claim against

Defendant arising out of the Secretary's decision not to invoke the emergency listing procedures as

requested by Plaintiff in its Emergency Petition.  *See* Pl.'s Mot. at 1; Pl.'s Reply at 2.  Defendant

opposes Plaintiff's request, asserting that its should be denied as futile because the Court lacks

jurisdiction to review the new claim under the APA.[5]  *See generally* Def.'s Opp'n.  Specifically,

Defendant makes two arguments: (1) the Secretary's decision "was an action committed to agency

discretion by law and therefore not subject to judicial review under the APA;" and (2) the

Secretary's "letter[s] denying the emergency listing petition [were] not [] 'final agency action[s]' for

purposes of the APA."  Def.'s Opp'n at 1.  Because the Court finds that the Secretary's decision not

to issue emergency listings is committed to agency discretion by law, such that judicial review under

the APA is precluded, the Court need not reach Defendant's second argument that the denial letters

were not final actions for purposes of the APA.

Plaintiff seeks review of its supplemental claim under the APA, not the ESA, and rightly so

given that the D.C. Circuit has previously foreclosed judicial review of Plaintiff's supplemental

claim under the ESA.  In *Fund for Animals*, the D.C. Circuit held that:

> [T]he ESA clearly establishes but a single petition process for listing a species as
> endangered or threatened, *see* 16 U.S.C. § 1533(b)(3)(A); there is no separate process
> in the ESA or its implementing regulations for requesting an "emergency listing" as
> opposed to a "non-emergency" listing. Although § 1533(b)(7) does permit the Secretary

---

[5]The Court notes that Defendant's arguments opposing Plaintiff's motion as to its request for leave to supplement are based solely on the futility of Plaintiff's request.  *See generally* Def.'s Opp'n.  Defendant does not raise "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment," *Foman*, 371 U.S. at 182, as a basis for denying Plaintiff's motion to supplement.  *See generally* Def.'s Opp'n.

> to list a species based upon an "emergency posing a significant risk to the well-being of
> [that] species," that type of listing is expressly committed to the Secretary's "discretion,"
> the exercise of which is not structured by any statutorily prescribed criteria or
> procedures. The [plaintiff] therefore had no statutory right to petition the Secretary for
> an emergency listing under § 1533(b)(7), and no right to a decision meeting any
> particular procedural or substantive standards.

428 F.3d at 1063-64.  Accordingly, Plaintiff may not obtain judicial review of the Secretary's

decision under the ESA.

The D.C. Circuit, however, clarified that its decision in *Fund for Animals* "refers only to the

availability of judicial review under the [ESA]" and "does not[] resolve whether plaintiffs may seek

to have the denial of an emergency listing requested reviewed under the [APA], 5 U.S.C. § 704."

*See* Pl.'s Reply, Ex. 1 (Order in *Fund for Animals, Inc. v. Hogan*, No. 03-5077 (D.C. Cir. Feb. 17,

2006)).  The D.C. Circuit therefore has not reached the question at issue here—judicial review of

the Secretary's denial of an emergency listing under the APA.  Moreover, as Plaintiff points out,

"the fact that a claim cannot be maintained under the ESA does not necessarily preclude bringing

that claim under the APA."  *American Bird Conservancy v. Kempthorne*, Civ. Act. No. 06-2641,

2007 WL 2972548, at *8 (D.N.J. Oct. 11, 2007).  As the Supreme Court has observed, "it would not

be maintainable [] that the causes of action against the Secretary set forth in the ESA's citizen-suit

provision are exclusive, supplanting those provided by the APA."  *Bennett v. Spear*, 520 U.S. 154,

175 (1997).  The question therefore is whether the Court may review Plaintiff's supplemental claim

challenging the Secretary's denial of its request for emergency listings under the APA, or not at all.

Under the APA, "[a]gency action made reviewable by statute and final action for which there

is no other adequate remedy in court are subject to judicial review."  5 U.S.C. § 704.  However, as is

relevant here, the APA specifically precludes review of "agency action committed to agency

discretion by law." *Id.* § 701(a).  The Supreme Court has held that section 701(a) precludes judicial

review where a "statute is drawn so that a court would have no meaningful standard against which

to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  As the

Supreme Court observed, "if no judicially manageable standards are available for judging how and

when an agency should exercise its discretion, then it is impossible to evaluate agency action for

'abuse of discretion.'"  *Id.*  Defendant argues that this is precisely the situation at hand, and the

Court agrees.

        As Defendant points out, the ESA gives the Secretary the *authority*—but not the *duty*—to

list a species on an emergency basis.  *See* 16 U.S.C. § 1533(b)(7).  That is, section 1533(b)(7)

provides the Secretary with the option of issuing emergency regulations (including listings), but the

decision of whether and when to use that option is entirely committed to the Secretary's discretion.

Indeed, the D.C. Circuit found as much in *Fund for Animals*, stating: "Although § 1533(b)(7) does

permit the Secretary to list a species based upon an 'emergency posing a significant risk to the

well-being of [that] species,' that type of listing is *expressly committed to the Secretary's*

*'discretion,' the exercise of which is not structured by any statutorily prescribed criteria or*

*procedures."*  428 F.3d at 1063-64 (emphasis added).  The D.C. Circuit's finding would seem to

compel the conclusion that review of the Secretary's emergency listing decision is "committed to

agency discretion by law" and consequently precluded from review under the APA.  Indeed, this is

the very decision reached by the only court to have directly addressed the issue.  *See American Bird,*

2007 WL 2972548, at *8-9 (finding that the Secretary's decision to deny plaintiff's request for an

emergency listing "falls within the 'discretion' exception to the APA and, therefore, is not

reviewable").[6]

Plaintiff attempts to avoid this conclusion by arguing that *Fund for Animals* is inapposite to the situation at hand because the opinion expressly did not rule on whether a plaintiff may obtain judicial review under the APA for denial of an emergency listing under the ESA. *See* Pl.'s Reply at 3-4 (stating that *Fund for Animals* "in fact left the door open to an APA claim such as that advanced by [Plaintiff] here"). In other words, Plaintiff appears to believe that because *Fund for Animals* did not expressly decide the issue at hand, it is irrelevant to the question now before this Court. But Plaintiff is wrong. Although the D.C. Circuit opinion in *Fund for Animals* may not have decided the legal question at hand—*i.e.,* whether judicial review under the APA (as opposed to under the ESA) is available in this circumstance—the D.C. Circuit did reach and decide a key issue underlying the legal question now before the Court—whether the Secretary's decision to issue an emergency listing is "committed to agency discretion by law," such that there are "no judicially manageable standards [] available for judging how and when an agency should exercise its discretion." *See Heckler,* 470 U.S. at 830. On this question, the D.C. Circuit answered in the affirmative, finding that an emergency listing decision is "expressly committed to the Secretary's 'discretion.'" *Fund for Animals*, 428 F.3d at 1063-64. Having so answered, this Court is compelled

---

[6]Plaintiff argues that the decision in *American Bird* is not persuasive because the opinion "merely repeats the language of the D.C. Circuit in *Fund for Animals* without recognizing that the D.C. Circuit did not reach an opinion as to the viability of a claim under the APA and not the ESA." Pl.'s Reply at 4. Plaintiff is wrong for two reasons. First, contrary to Plaintiff's assertion, the decision in *American Bird* expressly recognizes that *Fund for Animals* resolved only the question of review under the ESA and not the APA. *See American Bird*, 2007 WL 2972548 at *6 n.6. Second, the *American Bird* opinion cites the *Fund for Animals* decision only in its analysis of the availability of judicial review under the ESA. *See id.* at *5-7. The district court did not cite to or rely on *Fund for Animals* in reaching its conclusion that judicial review was precluded under the APA as well. *See id.* at *8-10.

to follow the D.C. Circuit's finding.  Accordingly, the only logical, and indeed permissible, conclusion is that the Secretary's decision denying Plaintiff's request for an emergency listing is precluded from APA review.

Plaintiff nonetheless urges that, contrary to *Fund for Animals*, "many courts, *including the D.C. Circuit*, have reviewed emergency listing decisions under the APA and found meaningful standards to apply."  Pl's Reply at 6 (emphasis in original).  Plaintiff cites two cases in support of this statement:  *City of Las Vegas v. Lujan*, 891 F.2d 927 (D.C. Cir. 1989) and *Friends of the Wild Swan, Inc., v. United States Fish and Wildlife Service*, 945 F. Supp. 1388 (D. Ore. 1996).  *Id.* Plaintiff's reliance on these cases, however, is misplaced.  First, contrary to Plaintiff's assertion that *City of Las Vegas* involved judicial review of an "emergency listing decision," *id.*, review of that case demonstrates that it in fact involved judicial review of an emergency *regulation* issued by the Secretary pursuant to his authority under the ESA.  *See City of Las Vegas*, 891 F.2d at 929.  The distinction is significant.  In *City of Las Vegas*, the Secretary issued an emergency regulation listing the Mojave Desert population of the desert tortoise as an endangered species.  *Id.*  As a result of the Secretary's emergency regulation, individuals were prohibited from relocating the desert tortoise or altering its habitat during construction activities.  *Id.*  The City of Las Vegas alleged that this resulting restriction would bring construction activity in southern Nevada to a standstill, and so brought suit challenging the Secretary's emergency regulation.  *Id.*  The D.C. Circuit proceeded to evaluate the emergency regulation, holding that courts should apply a "less exacting" standard to a review of regulations issued pursuant to section 1533(b)(7)'s emergency procedures than would be applied to a review of regulations issued pursuant to the normal rulemaking procedures provided for in the ESA.  *Id.* at 932.  *City of Las Vegas* therefore involved review of an emergency regulation

13

actually issued by the Secretary after his initial determination that such regulations were warranted. *See* 891 F.2d at 929-31.  The opinion in *City of Las Vegas* thus stands only for the unremarkable proposition that, having initially decided to use his authority under the ESA to issue emergency regulations, the substance of any such regulations is not entirely within the Secretary's unbounded discretion.  The case does not speak to whether there is judicial review of the Secretary's initial decision whether an emergency listing is warranted in the first place.

As the Supreme Court stated in *Heckler*, "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect."  470 U.S. at 832 (emphasis in original).  By contrast, "when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner.  The action at least can be reviewed to determine whether the agency exceeded its statutory powers."  *Id.* (emphasis in original).  If, as in *City of Las Vegas*, the Secretary affirmatively decides to promulgate emergency regulations, the resulting regulations are an exercise of the agency's power and properly fall within the latter category of actions generally subject to judicial review. But if, as here, the Secretary declines to use his authority under section 1553(b)(7) to issue emergency regulations, the decision does not result in the "exercise [of] *coercive* power, and thus does not infringe upon areas that courts are often called upon to protect."  *Id.*

Second, although the court in *Friends of the Wild Swan* reviewed the Secretary's decision whether to issue emergency listings, the species at issue in that case had already received a "warranted but precluded" 90-day finding.  *See Friends of the Wild Swan*, 945 F. Supp. at 1392, 1394-95.  The presence of the "warranted but precluded" finding distinguishes *Friends of the Wild*

14

*Swan* from the case at hand.  As discussed above, *see supra* 2-5, under the normal listing procedures

set forth in the ESA, upon receipt of a citizen's petition, the Secretary is required to make a "90-day

finding" determining whether the petitioned action is warranted.  16 U.S.C. § 1533(b)(3)(A).  Once

the Secretary issues an affirmative 90-day finding, the ESA requires that the Secretary then make a

"12-month finding," stating whether the petitioned action is (a) warranted; (b) not warranted; or (c)

warranted but precluded by other listing activity.  *Id.* § 1533(b)(3)(B).  In 1988, Congress amended

the ESA to impose special emergency listing duties on the Secretary when the agency makes a

"warranted but precluded" finding.  *Friends of Wild Swan*, 945 F. Supp. at 1395.  Specifically, upon

issuing a "warranted but precluded" finding, the ESA provides that "[t]he Secretary shall implement

a system to monitor effectively the status" of that species and he "*shall* make prompt use" of the

emergency regulation procedures set forth in section 1533(b)(7).  *Id.* § 1533(b)(3)(C)(iii) (emphasis

added).  As the court in *Friends of the Wild Swan* observed, "Congress's use of 'shall' indicates that

it imposed a legal duty—not discretionary power—upon [the Secretary]," but *only* in those

situations in which the Secretary has previously made a "warranted but precluded" finding.  *See* 945

F. Supp. at 1395; *see also American Bird*, 2007 WL 2972548, at *7 n.7 (noting that "[i]n some

situations not relevant to the instant motion, the ESA appears to create a non-discretionary duty for

the Secretary to invoke his emergency rulemaking authority" and citing 15 U.S.C. §

1533(b)(3)(C)(iii)).  The situation before the Court does not involve a similar finding of "warranted

but precluded," and Plaintiff's reliance on *Friends of the Wild Swan* is therefore inapposite.  There

is no similar language requiring that the Secretary "shall" make prompt use of the ESA's emergency

procedures in this case.  Indeed, the statute provides no guidance whatsoever as to when the

Secretary should issue emergency regulations for species for which no "warranted but precluded"

90-day finding has been made.

Moreover, practical considerations further counsel in favor of the Court's conclusion that the Secretary's decision *not* to issue an emergency listing is one committed to agency discretion by law. As the D.C. Circuit has stated, the determination of whether an action is "committed to agency discretion by law" is one that "[i]n practice . . . necessarily turns on pragmatic considerations as to whether an agency determination is the proper subject of agency review." *Natural Res. Def. Council, Inc. v. S.E.C.*, 606 F.2d 1031, 1043 (D.C. Cir. 1979).

> In making this determination, we first identify as precisely as possible the aspects of the agency's action against which challenge is brought. We then evaluate the relevance of three particularly important factors: the need for judicial supervision to safeguard the interests of the plaintiffs; the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role; and the appropriateness of the issues raised for judicial review. Finally, we inquire whether the considerations in favor of nonreviewability thus identified are sufficiently compelling to rebut the strong presumption of judicial review.

*Id.* at 1044 (internal citations omitted).  Here, the decision challenged is the Secretary's decision *not* to invoke his authority, pursuant to section 1533(b)(7), to issue an emergency listing.  The Court finds that consideration of the three factors identified above counsels against judicial review of the Secretary's decision in this instance.  First, the normal listing procedures provided under the ESA sufficiently safeguard the Plaintiff's interests in having the Secretary consider and decide upon the status of the 32 species at issue in the Emergency Petition.  Under these procedures, Plaintiff may petition to have certain species listed as threatened or endangered.  The Secretary's denial of the emergency listings for the 32 species at issue in Plaintiff's Emergency Petition does not deprive or otherwise interfere with Plaintiff's statutory right to petition for listings of the same species through the normal ESA and APA rulemaking procedures, and Plaintiff has in fact done so.  Second,

16

"[r]equiring [the Secretary] to defend in court its decision not to adopt proposed [listings] will divert scarce institutional resources into an area that the agency in its expert judgment has already determined," thereby impeding, to some extent, the agency's effective performance of its statutory mission. *See Natural Res. Def. Council*, 606 F.2d at 1045. Indeed, to permit judicial review of the Secretary's denial of Plaintiff's request for an emergency listing would defeat the purpose of giving the Secretary the discretionary option of invoking the ESA's emergency provisions, as "every petitioner would simply declare that their request constituted an emergency, thus forcing the agency to respond immediately regardless of the validity of the request or the existence of prior resource commitments or budgetary constraints." *Institute for Wildlife Protection v. Norton*, 303 F. Supp. 2d 1175, 1180 (W.D. Wash. 2003). Third and finally, the Secretary's decision not to issue an emergency regulation is poorly suited for judicial review. As the D.C. Circuit has observed, "an agency's discretionary decision not to regulate is inevitably based, in large measure, on factors not inherently susceptible to judicial resolution, *e.g.,* internal management considerations as to budget and personnel; evaluations of its own competence; weighing of competing policies within a broad statutory framework." *Natural Res. Def. Council*, 606 F.2d at 1046. The Court concludes that these factors favoring non-reviewability are sufficiently compelling to preclude judicial review under the APA. Accordingly, the Court is without jurisdiction to review Plaintiff's new claim arising from the Secretary's denial of Plaintiff's request for emergency listings. The Court therefore finds that Plaintiff's request for leave to supplement its Complaint is futile.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall grant in part and deny in part Plaintiff's [14] Motion for Leave to Amend and Supplement the Complaint. Specifically, Plaintiff's Motion is

granted as to its unopposed request for leave to amend the Complaint for clarification purposes, but

is denied as to its request for leave to supplement the Complaint with a new claim against

Defendant.  Accordingly, Plaintiff shall file its Amended Complaint, to reflect the technical

amendments discussed herein, by no later than January 15, 2009.  An appropriate order accompanies

this memorandum opinion.

Date: December 22, 2008

                                        _/s/_
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge